UNITED STATES DISTRICT COURT
EASTER DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JASON CRIGGER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5: 16-247-DCR |
| | ) |
| V. | ) |
| | ) |
| DARRELL STEVE MCINTOSH, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of the defendant's motion for summary judgment [Record No. 23], motion *in limine* [Record No. 32], and motion to exclude evidence [Record No. 33]. For the following reasons, the motion for summary judgment will be granted, in part, and denied, in part. The motion *in limine* and motion to exclude will be denied.

### I. Background

Plaintiff Jason Crigger ("Crigger" or "plaintiff") is an Emergency Medical Technician ("EMT") who works for an ambulance service called Arrow-Med in Breathitt County, Kentucky. [Record No. 14–1, p. 5] Darrell McIntosh ("McIntosh" or "defendant") is a Breathitt County Deputy Sheriff. [Record No. 1–1, p. 1] He also is the owner McIntosh Ambulance, a competitor of Arrow-Med. *Id.* Arrow-Med and McIntosh became involved in a commercial dispute, which resulted in Arrow-Med filing suit against McIntosh in Breathitt Circuit Court in October 2015 (*See* Breathitt Civil Action, C115-CI-240.) [Record No. 1–1, p. 2; 14–1, p. 2]

On June 22, 2016, McIntosh apparently was observing activities in a dialysis center parking lot in Jackson, Kentucky. [*See* Record No. 15–1, p. 1.] He claims that he observed Crigger driving with one hand and "doing something on his cell phone with the other hand." *Id.* According to McIntosh, this constituted careless or reckless driving, especially because a patient was being transported. *Id.* McIntosh "attempted to flag down" the ambulance, but Crigger did not stop. McIntosh then activated his emergency lights as Crigger was pulling onto the highway. Both vehicles then pulled to the shoulder of the road. *Id.* McIntosh contends that he approached Crigger and explained that he had stopped him for "driving while using his cell phone." [Record No. 15–1, p. 2] According to McIntosh, Crigger asked if he was being detained. When McIntosh told him that he was not, Crigger left the scene without incident. McIntosh maintains that the stop lasted two minutes or less. *Id.* at p. 2.

Crigger's version of events differs somewhat.[1] [Record No. 14–1, p. 3] He testified that McIntosh had been following "just about every one of [Arrow-Med's ambulance drivers]" for several months. *Id.* at p. 9. Accordingly, "one or two" of the drivers had taken photos with their cell phones to document McIntosh following them. *Id.* Crigger stated that he grew tired of McIntosh following and harassing the EMTs so, while in the parking lot, he pointed his cell phone at McIntosh. *Id.* at p. 11–12. Crigger concedes that he had his cell phone "up" for an unspecified length of time while operating the ambulance, but denies that he was "filming"

---

[1] Arrow-Med applied for a preliminary injunction and restraining order in the state court action to prevent McIntosh from "misusing his position as a deputy sheriff" by pulling over ambulances. The state court held a hearing on September 23, 2016, during which Crigger testified regarding the incident. The state court granted a preliminary injunction, restraining McIntosh from misusing his position as deputy sheriff. The court concluded, based on the facts before it, that "there was no good faith attempt to enforce the law," but instead, "an attempt to intimidate and harass the Plaintiff's business." [Record No. 24–1, p. 2]

McIntosh while the vehicle was in motion. *Id.* at p. 12. Rather than discussing a traffic violation, Crigger alleges McIntosh detained him for approximately five minutes during which McIntosh accused him of "filming patients" and violating the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at p. 6–7.

On June 24, 2016, Crigger filed this action in Breathitt Circuit Court. Thereafter, McIntosh filed a timely notice of removal. [Record No. 1] Crigger alleges that his seizure was without probable cause and based on McIntosh's misuse of his position as deputy sheriff. [Record No. 1-1 at p. 2] His claims include false detention and imprisonment in violation of the Fourth Amendment under 42 U.S.C. § 1983 as well as a state law claim of false imprisonment.

## II. Motion to Exclude

The defendant has moved under Rule 37 of the Federal Rules of Civil Procedure to exclude all evidence at trial which the plaintiff failed to disclose under Rule 26. [Record No. 33] This would result in excluding all of the plaintiff's proposed evidence, since the plaintiff concedes that he failed to make any disclosures prior to the close of discovery. *Id.* at p. 3.

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). This sanction is mandatory unless the offending party provides a reasonable explanation for the non-compliance or the mistake was harmless. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). In determining whether a party's omitted or late disclosure is substantially justified or harmless, the Court considers the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to

which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015).

In this case, the plaintiff has failed to offer a valid justification for failing to comply with the requirements of Rule 26. [*See* Record No. 42.] Instead, counsel appears to have been under the impression that the related issues in the state-court proceeding somehow relieved the plaintiff of his obligation to provide initial disclosures in this case. While this position is patently incorrect, there is a strong preference for deciding cases on their merits. Therefore, the Court is reluctant to impose the sanctions requested by the defendant based on the obvious lack of diligence by the plaintiff's attorney. The first four *Howe* factors weigh in favor of admitting the limited evidence identified in the plaintiff's untimely Rule 26 disclosures. [Record No. 42–2] The plaintiff has not identified any items or documents other than pleadings filed in the state-court record. *Id.* at p. 2. Additionally, the only individuals identified are Crigger, an Arrow-Med employee who was present during the traffic stop, and the owner of Arrow-Med.[2] *Id.* It is clear that the defendant was aware of these pleadings and individuals prior to the close of discovery in the instant matter. Accordingly, the danger of surprise with respect to this evidence is absent.

Rule 26 also provides that "a party must, without awaiting a discovery request, provide . . . a computation of each category of damages . . . [and] the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based."

---

[2] Crigger and Hershel Arrowood testified in the state court hearing regarding Arrow-Med's motion for a preliminary injunction/restraining order against McIntosh. [Record No. 14–1] McIntosh filed the hearing transcript in the record in the instant matter on October 18, 2016. *Id.*

Fed. R. Civ. P. 26(a)(1)(A)(iii). The plaintiff likewise did not comply with this requirement, but provided computations for punitive damages and damages for embarrassment and humiliation in his belated Rule 26 disclosures. The Court notes that the plaintiff identified each of these categories of damages in his Complaint. Further, the defendant has not objected specifically to the plaintiff's failure to disclose damages. It is generally recognized that "because emotional suffering is personal and difficult to quantify and because compensatory damages are typically considered a fact issue for the jury, emotional distress damages are not subject to the kind of calculation" required for initial disclosures. *Scheel v. Harris*, No. 3: 11–CV–17, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012). Punitive damages, like damages for emotional suffering, are not readily amenable to the requirements of Rule 26(a)(1)(A)(iii). *Id.*

On August 2, 2016, the Court entered a Scheduling Order which included deadlines for making disclosures under Rule 26(a). [Record No. 7] In that Order, the parties were directed to file monthly joint status reports, summarizing the activities in the case for the preceding thirty days. *Id.* at p. 5. Although the parties submitted timely reports, neither indicated that the Scheduling Order had not been followed or that discovery was not proceeding according to plan. Based on the foregoing, the defendant's motion to exclude will be denied.

### III.    Summary Judgment

Summary judgment is appropriate when there are no genuine issues regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. The Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). *See also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all of the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### a. **Qualified Immunity**

The defendant contends that he is shielded from the plaintiff's federal law claims based on the doctrine of qualified immunity. Generally, a government official performing discretionary functions is entitled to qualified immunity in his individual capacity and is shielded from civil suit if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 236 (6th Cir. 1992). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The protection provided by qualified immunity covers mere mistakes in judgment, *id.*, and immunizes from suit "all but the plainly incompetent or those

who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 841, 847 (6th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining whether qualified immunity applies, the Court must determine: (i) whether the facts as alleged establish that the officer's conduct violated a constitutional right and (ii) whether that right was clearly established at the time of the offense. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Pearson*, 555 U.S. at 231. The Court may consider these questions in any order, but if the answer to either question is "no," the defendant is immune from suit. *Pearson*, 555 U.S. at 236. "To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *See also Perez v. Oakland Cnty.*, 466 F.3d 416, 427 (6th Cir. 2006). However, the Court must still construe the facts in a light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Scott v. Harris*, 550 U.S. 372, 377 (2007).

### b. The Traffic Stop as a Fourth Amendment Violation

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. CONST. amend. IV. This protection extends to brief investigative stops such as traffic stops, which are "seizures" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). To justify this type of seizure, officers need only "reasonable suspicion" of illegal conduct. *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014). *See also Sampson v. Village of Mackinaw City*, No. 16–1919, 2017 WL 1279281, at *4 (6th Cir. April 6, 2017). Reasonable suspicion must be based on "a particularized and objective basis" for suspecting the particular person stopped of breaking the law or committing a traffic violation. *Sampson,* 2017 WL

1279281, at *3. *See also United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016). "A citizen's right to be free from traffic stops based on less than reasonable suspicion is a clearly established right." *Smith v. Williams*, 78 F.3d 585, *6 (6th Cir. 1996) (table). *See also Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003); *Wilson v. Dept. of Pub. Safety*, 66 F. App'x 791, 796–97 (10th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 20–27 (1968)).

McIntosh contends that he was enforcing K.R.S. §§ 189.292 and 290 when he stopped Crigger. Section 189.292 prohibits drivers from typing or reading text messages, instant messages, and e-mails while driving on a "traveled portion of a roadway." The statute expressly excludes prohibitions on reading, selecting, or entering a phone number for the purpose of making a phone call; using a global positioning system that is part of a personal communication device; or summoning help or reporting illegal activity. K.R.S. § 189.292(3). Additionally, the prohibition does not extend to use of personal communication devices by operators of emergency vehicles when the use of such device is an essential function of the operator's official duties. *Id.* The statute does not prohibit any cellular telephone uses other than text-based communications.

McIntosh has not provided a particularized and objective basis for suspecting that Crigger had violated or was about to violate K.R.S. § 189.292. It is unclear that Crigger was driving on a traveled portion of the roadway when McIntosh observed him "doing something with his cell phone." McIntosh eventually explained to Crigger that he was stopped for "driving while using his cell phone." Put simply, reasonable suspicion requires more than a hunch. Officers must point to "specific and articulable facts" that suggest unlawful conduct. *See Terry*, 392 U.S. at 21. "Using" or "doing something" with a cell phone while driving does

not constitute a particularized and objective basis for suspecting that a violation of the anti-texting statute has occurred.

Kentucky Revised Statutes § 189.290 provides as follows:

(1) The operator of any vehicle upon a highway shall operate the vehicle in a careful manner, with regard for the safety and convenience of pedestrians and other vehicles upon the highway.

(2) No person shall willfully operate any vehicle on any highway in such a manner as to injury the highway.

McIntosh also has failed to identify specific, articulable facts regarding what he characterizes as Crigger's "careless/reckless" driving. Despite the defendant's tendered exhibits regarding "distracted driving," [Record No. 23–2, 3] there is nothing *inherently* careless or reckless about using a cell phone while driving. While McIntosh indicates that he was concerned because Crigger was transporting a patient, he has not provided any specific facts to indicate that Crigger's purported use of a cell phone prevented him from operating the ambulance in a careful manner as required by § 189.290.

McIntosh contends, without explanation, that "an Arrow-Med Ambulance had been apparently videotaping Lee County Ambulance personnel and dialysis patients." [Record No. 15–1, p. 1] He also claims that Crigger "apparently . . . was video recording with his phone." *Id.* at p. 2. Because McIntosh has failed to provide supporting facts, it is unclear what caused McIntosh to believe that Crigger was recording or when McIntosh believes the recording occurred. Crigger concedes that he pointed his phone at McIntosh while parked at the dialysis center and that he had his phone "up" at some point while the ambulance was in motion. However, without more, these circumstances do not constitute reasonable suspicion of careless or reckless driving under § 189.290. *But see, e.g., United States v. Lopez*, 567 F.3d 755, 757

(6th Cir. 2009); *United States v. Scott*, 338 F. App'x 517 (6th Cir. 2009) (speeding or driving erratically constitutes reckless driving in violation of § 189.290); *United States v. Carter*, 45 F. App'x 339, 344 (6th Cir. 2002) (speeding, making a u-turn, erratic driving, and crossing the center line); *United States v. Copley*, No. 4: 16-CR-10, 2016 WL 3964070, at *2 (W.D. Ky. July 19, 2016) (driving across the fog line and onto the rumble strip repeatedly); *United States v. Thompson*, 3: 15-CR-10, 2016 WL 845337, at *2 (W.D. Ky. March 2, 2016) (changing lanes without signaling and cutting off other cars); *United States v. Shanklin*, 3: 06-CR-148, 2007 WL 2042452, at *2–3 (W.D. Ky. July 11, 2007) (weaving back and forth between lanes and failing to use turn signal).

McIntosh is not entitled to qualified immunity with respect to Crigger's § 1983 claims against him in his individual capacity. His motion for summary judgment on this basis will be denied.

### c. Official Capacity Claims

An official capacity action filed against a public employee is the equivalent of a suit against the government entity which the employee represents. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiffs cannot hold municipalities liable for employees' actions under § 1983 based on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, municipal liability must rest on violations that are attributable to the municipality itself. Such violations may spring from official policies, widespread customs or practices, or the failure to train employees adequately. *See Monell*, 436 U.S. at 694. *See also Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006).

The plaintiff has failed to cite any unlawful practice or policy, nor a deficiency in training with respect to traffic stops. Additionally, he has not alleged that any policymaker condoned, or had reason to know, of McIntosh's alleged harassment of ambulance drivers using his sheriff's cruiser. In short, he has failed to provide facts which link the county to the defendant's alleged conduct in any way. Accordingly, summary judgment will be granted in favor of the defendant with respect to the § 1983 claims against the defendant in his official capacity.

### d. State Law Claims

The plaintiff alleges that he was falsely imprisoned in violation of Kentucky law as a result of the traffic stop. False imprisonment (sometimes called false arrest) is "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001). To qualify as false imprisonment, the restraint must have been "wrongful, improper, or without a claim or reasonable justification, authority or privilege." *Id.* The tort is complete after "even a brief restraint on the plaintiff's freedom" and plaintiffs may recover nominal damages. *Id.*

When a government employee is sued in his official capacity, he is entitled to the same immunity afforded to the agency employing him. *Autry v. Western Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007). *See also Yanero v. Davis*, 65 S.W.3d. 510, 522 (Ky. 2001). Because the county is entitled to governmental immunity, McIntosh is also entitled to immunity and is shielded from the plaintiff's state-law claims against him in his official capacity. *See, e.g., Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009) ("Counties . . . enjoy the same immunity as the state itself."). *See also Schwindel v. Meade*

*Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003) ("A county government is cloaked with sovereign immunity.").

When sued in their individual capacities, qualified official immunity protects public officers from damages liability for good faith judgment calls made in a legally uncertain environment. *Yanero v. Davis*, 65 S.W.3d. at 522. The standard for applying qualified official immunity is set out as follows:

> Qualified official immunity (what officers enjoy when sued in their individual, rather than official, capacities) applies to negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Id.*

The parties do not dispute that McIntosh was acting within the scope of his authority when he stopped Crigger, or that the performance of a traffic stop is a discretionary act. However, questions remain regarding whether McIntosh acted in good faith. Bad faith may be predicated on a violation of a "constitutional . . . or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 510. As previously explained, it is unclear that McIntosh had reasonable suspicion for making the traffic stop. Additionally, Crigger's testimony given in the state-court hearing suggests that McIntosh may have been acting with a corrupt motive. Therefore, the defendant's motion for summary judgment with respect to the plaintiff's state-law claim will be denied.

## V.   Motion *in Limine*

The defendant has also filed a motion *in limine* to exclude various categories of evidence including, *inter alia*, "evidence that is not relevant," "all lay opinion testimony regarding the validity of decisions made . . . by the police officer," "evidence regarding Defendants' liability insurance," and "any hearsay statements." [Record No. 32]  The motion *in limine* is premature, in large part, because there is no indication that the plaintiff will attempt to offer such evidence during trial.  Further, the defendant has failed to identify any particular hearsay statements he seeks to exclude.  If the plaintiff offers such evidence during trial, the defendant will have the opportunity to object, and the Court will address the defendant's objection at that time.

The defendant also requests that the Court preclude the plaintiff from asking the jury for an award of punitive damages.  Punitive damages are available under 42 U.S.C. § 1983 when the defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  A similar standard applies under Kentucky tort law.  *See Banks*, 39 S.W.3d at 481.  Because genuine issues of material fact remain regarding the plaintiff's claims, the defendant's request regarding exclusion of a jury instruction on punitive damages is premature.

## VI.   Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion to exclude evidence [Record No. 33] is **DENIED**.

2. The defendant's motion for summary judgment [Record No. 23] is **GRANTED**, in part, and **DENIED**, in part.

3. The defendant's motion *in limine* [Record No. 32] is **DENIED**.

This 8th day of June, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge